1  GREGORY M. FOX, ESQ., SBN 070876
   DANA L. SOONG, ESQ., SBN 168160
2  BERTRAND, FOX & ELLIOT
   The Waterfront Building
3  2749 Hyde Street
   San Francisco, CA 94109
4  Telephone: (415) 353-0999
   Facsimile:  (415) 353-0990
5

6  HARVEY E. LEVINE, ESQ., SBN 61880
   City of Fremont
7  3300 Capitol Avenue
   P.O. Box 5006
8  Fremont, CA 94537-5006
   Telephone:   (510) 284-4030
9  Facsimile:   (510) 284-4031

10 Attorneys for defendant CITY OF FREMONT,
   CRAIG STECKLER, AND MICHAEL CHINN
11

12

13                    UNITED STATES DISTRICT COURT

14                   NORTHERN DISTRICT OF CALIFORNIA

15

16 | JENNIFER SAMSON DAVID, by and            ) Case No.: C 05 00046 CW
17 | through her attorneys-in-fact ROBERT     ) Case No.: C 05 00956 CW
   | NOVAK and CONSTANT NOVAK,                )
18 | individually and in her representative capacity )
   | as successor in interest to Glenn P. David, ) **DEFENDANTS CITY OF FREMONT,**
19 |                                          ) **CRAIG STECKLER AND OFFICER**
   |             Plaintiff,                   ) **MICHAEL CHINN'S REPLY TO**
20 |                                          ) **PLAINTIFFS RACHEL DAVID AND**
   |        vs.                               ) **M.D.'S OPPOSITION TO MOTION FOR**
21 |                                          ) **SUMMARY JUDGMENT, OR IN THE**
   | CITY OF FREMONT, a municipal             ) **ALTERNATIVE, PARTIAL SUMMARY**
22 | corporation; CRAIG STECKLER, individually) **JUDGMENT**
   | and in his capacity as Chief of Police for the )
23 | CITY of Fremont: OFFICER MICHAEL          )
   | CHINN, individually; DOES 1- 10, inclusive, )
24 |                                          ) Honorable Claudia Wilken
   |            Defendants.                   )
25 |                                          )
   |                                          )
26 |_____)
27 | RACHEL DAVID; M. D., by and through her)
   | Guardian Ad Litem, LORI ALEMANIA,        )
28 |                                          )
   |                                          )
   |            Plaintiffs,                   )
   |                                          )

0

DEFENDANTS' REPLY TO PLAINTIFFS RACHEL DAVID AND MD'S OPPOSITION TO MSJ OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT   *David v. City of Fremont, et al.* Case No.: C 05 00046 CW

| | |
|---|---|
| vs. | ) |
| | ) |
| CITY OF FREMONT, a municipal corporation; CRAIG STECKLER, in his capacity as Chief of Police for the CITY OF FREMONT; MICHAEL CHINN, individually, and in his capacity as a police officer for the CITY OF FREMONT; and DOES 1-25, inclusive, individually and in their capacities as police officers for the CITY OF FREMONT, | ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) ) |

**DEFENDANTS CITY OF FREMONT, CRAIG STECKLER AND OFFICER MICHAEL CHINN'S REPLY TO PLAINTIFFS RACHEL DAVID AND M.D.'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

DEFENDANTS' REPLY TO PLAINTIFFS RACHEL DAVID AND MD'S OPPOSITION TO MSJ OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT   *David v. City of Fremont, et al.* Case No.: C 05 00046 CW

1

**TABLE OF CONTENTS**

I.   INTRODUCTION..................................................................................................................1

II.  LEGAL ARGUMENT..........................................................................................................2

    A.   Plaintiffs Failed To Produce Evidence To Resist Summary Judgment............................2

    B.   Officer Chinn's Conduct Was Not Conscience Shocking And Plaintiffs'
        Have No Evidence To Support Their Fourteenth Amendment Claims............................2

        1.   Officer Chinn Did Not Disobey Any Order To "Stage" And Peering
            In The Open Doorway Was Not Conscience Shocking.........................................3

        2.   Officer Chinn's Conduct Did Not Deviate From Any "Anticipated
            Plan" ......................................................................................................................5

        3.   Plaintiffs Provide No Evidence That Officer Chinn Acted As The
            Department's Negotiator.......................................................................................6

        4.   Plaintiffs Provide No Evidence That Officer Chinn's Conduct Was
            "Intended To Harm" "Unrelated To Any Legitimate Governmental
            Purpose" Rising To The Conscience Shocking Culpability Level........................6

    C.   Officer Chinn Is Entitled To Qualified Immunity.............................................................7

    D.   Officer Chinn's Use Of Deadly Force Was Objectively Reasonable And
        Privileged And Plaintiff's State Law Negligence Claims Are Meritless..........................9

    E.   Officer Chinn's Tactics Before The Shooting Were Not Negligent.................................9

    F.   Defendants Are Entitled To Good Faith Immunity For Plaintiffs' State
        Law Claims.....................................................................................................................11

V.   CONCLUSION....................................................................................................................12

# TABLE OF AUTHORITIES

**Cases**

*Adams v. City of Fremont*
  68 Cal.App.4th 243  (1998) ...........................................................................................10

*Billington v. Smith*
  292 F.3d 1177 (9th Cir. 2002) .........................................................................................8

*County of Sacramento v. Lewis*
  523 U.S. 833 (1998)......................................................................................................2, 3

*Deveraux v. Abbey*
  263 F.3d 1070 (9th Cir. 2001) .........................................................................................2

*Edson v. City of Anaheim*
  63 Cal. App. 4th 1269 (1998) .........................................................................................9

*Hunter v. Bryant*
  502 U.S. 224 (1991)........................................................................................................7

*In re Joseph F. v. Joseph F*
  85 Cal.App.4th 975 (2000) .............................................................................................9

*Maraziti v. First Interstate Bank of California*
  953 F.2d 520 (9th Cir. 1992) ...........................................................................................8

*Martinez v. County of Los Angeles*
  47 Cal.App.4th 334 (1996) .......................................................................................9, 12

*O.S.C. Corp. v. Apple Computer, Inc.*
  792 F.2d 1464 (9th Cir. 1986) ......................................................................................2, 7

*People v. Rivera*
  8 Cal.App.4th 1000 (1992) ...........................................................................................12

*People v. Turner*
  2 Cal.App.3d 632 (1969) ..............................................................................................11

*Reynolds v. County of San Diego*
  858 F.Supp. 1064 (1994) ...................................................................................7, 11, 12

*Saucier v. Katz*
  533 U.S. 194, 201 (2001)................................................................................................7

*Scott v. Henrich*
  39 F.3d 912 (9th Cir. 1994) .............................................................................................9

ii

DEFENDANTS' REPLY TO PLAINTIFFS RACHEL DAVID AND MD'S OPPOSITION TO MSJ OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT   *David v. City of Fremont, et al.* Case No.: C 05 00046 CW

*Villiarimo v. Aloha Island Air, Inc.*
  281 F.3d 1054 (9th Cir. 2002) .................................................................................................5, 6

**Statutes**

Government Code Section 815.2 ...................................................................................... 12, 13

Government Code Section 820.2 ...................................................................................... 12, 13

# I. INTRODUCTION

Plaintiffs Rachel David and M.D.'s opposition to defendants' motion for summary judgment fails to present any evidence setting forth a genuine issue for trial to defeat the instant motion.[1] Plaintiffs' "mere speculation, conjecture or fantasy" is insufficient to defeat the instant motion. The basis for all of plaintiffs' claims against Officer Chinn is their contention that he should not have peered into the open doorway and that this precipitated the entire incident. Plaintiffs, however, ignore the heightened "conscience shocking" standard they must satisfy to establish liability for Officer Chinn's conduct. The undisputed evidence establishes that decedent was under the influence of substantial amounts of methamphetamines, stabbed himself with a large knife at his workplace, was seen going in and out of the building after stabbing himself, co-workers were observed exiting the building even after the officers arrived, decedent had free access throughout the warehouse and front office area and he was still armed with the large knife. Decedent was *never contained*. The undisputed evidence further establishes that Officer Chinn only approached the open doorway to look inside and assess the situation. He did not enter the building, he did not confront decedent, his firearm was not drawn and he did not threaten decedent or even call out to him. Decedent, still armed with the knife, immediately became hostile and aggressive just upon seeing Officer Chinn. He refused to obey repeated commands to drop the knife, yelled at the officers to shoot him, and advanced on the officers armed with the knife, forcing Officer Chinn to shoot him when he closed to within 12 to 15 feet.

Plaintiffs attempt to create a triable issue by relying on pure "speculation, conjecture and fantasy", misrepresenting and mischaracterizing the evidence, and focusing on immaterial matters. Their "evidence" purposefully ignores the officers' relevant testimony and is intentionally misleading as to the actual state of the evidence in this case. Plaintiffs' arguments regarding Officer Chinn's alleged failure to obey the order to "stage", his passing Officer Malcolmson, his role as a cover officer, the arrival of crisis negotiators, his alleged performance as a negotiator and policy and training regarding confronting suicidal subjects also are all immaterial in this case. Under the facts as

---

[1] Plaintiff Jennifer David and plaintiffs M.D. and Rachel David have filed separate opposition briefs addressing different legal issues raised by the instant motion. Defendants thus have filed separate reply briefs to each of the opposition briefs. Defendants incorporate herein by reference their reply to Jennifer David's opposition.

DEFENDANTS' REPLY TO PLAINTIFFS RACHEL DAVID AND MD'S OPPOSITION TO MSJ OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT   *David v. City of Fremont, et al.* Case No.: C 05 00046 CW

1

confirmed by the tape recording of the incident, Officer Chinn's conduct at all times was objectively reasonable, and certainly did not rise to the "conscience shocking" level.

## II.     LEGAL ARGUMENT

### A.     Plaintiffs Failed To Produce Evidence To Resist Summary Judgment

Plaintiffs "'may not rest upon the mere allegations or denials of the adverse party's pleadings,' but must provide affidavits or other sources of evidence that 'set forth specific facts showing that there is a genuine issue for trial.'" (*Deveraux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001).)  The Courts "scrutinize the evidence and reasonable inferences to determine whether there is sufficient probative evidence to permit 'a finding in favor of the opposing party **based on more than mere speculation, conjecture or fantasy**." [Emphasis added.]  (*O.S.C. Corp. v. Apple Computer, Inc.*, 792 F.2d 1464 (9th Cir. 1986).)  Plaintiffs in the instant case fail to produce evidence to support their claims against defendants.  Their unsupported argument, speculation and conjecture is insufficient to raise a genuine issue for trial.

### B.     Officer Chinn's Conduct Was Not Conscience Shocking And Plaintiffs' Have No Evidence To Support Their Fourteenth Amendment Claims

Fourteenth Amendment claims require a much higher standard of proof than the "reasonableness" standard for Fourth Amendment claims.  "[T]he Due Process Clause is violated by executive action only when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." (*County of Sacramento v. Lewis,* 523 U.S. 833, 847 (1998).)  "[N]egligently inflicted harm is categorically beneath the threshold of constitutional due process." (*Id.* at 849.)  Even a showing of deliberate indifference is insufficient to support a substantive due process claim under circumstances like the instant case.  "[W]hen unforeseen circumstances demand an officer's instant judgment, even precipitate recklessness fails to inch close enough to harmful purpose to spark the shock that implicates the large concerns of the governors and the governed." (*Id.* at 853.) Instead, **"conduct intended to injure in some way unjustifiable by any government interest** is the sort of official action most likely to rise to the conscience-shocking level." [Emphasis added.]  (*Id.* at 849.) When unforeseen circumstances demand an officer's instant judgment, "**only a purpose to cause harm unrelated to the legitimate object of arrest will satisfy the element of arbitrary conduct**

DEFENDANTS' REPLY TO PLAINTIFFS RACHEL DAVID AND MD'S OPPOSITION TO MSJ OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT   *David v. City of Fremont, et al.* Case No.: C 05 00046 CW

2

**shocking to the conscience necessary for a due process violation**." [Emphasis added.] (*Id.* at 836.)

In the instant case, the unforeseen, rapidly evolving and life-threatening circumstances of the situation demanded Officer Chinn's instant judgment, and his conduct "fails to inch close enough to harmful purpose" to shock the conscience. Decedent stabbed, cut and armed himself with a knife in an unsecured area with a wide-open doorway and officers and civilians right outside. When Officer Chinn looked in the doorway to assess the situation and locate decedent, decedent became hostile and aggressive and charged at Officer Chinn with a deadly weapon. Officer Chinn instantly responded to the attack by firing his weapon as decedent advanced with the knife. Officer Chinn's conduct cannot be classified as conduct intended to harm decedent unjustifiable by any legitimate law enforcement purpose, and, therefore, fails to satisfy the "conscience shocking" standard necessary to establish a violation of substantive due process rights. Plaintiffs, apparently recognizing the substantial burden they must meet to demonstrate "conscience shocking" conduct, attempt to raise a triable issue based on "mere speculation, conjecture and fantasy."

### 1. Officer Chinn Did Not Disobey Any Order To "Stage" And Peering In The Open Doorway Was Not Conscience Shocking

The undisputed evidence plainly establishes that Officer Chinn did not disobey any order to "stage". Plaintiffs' argument in this regard is unsupported by any evidence and insufficient to raise a triable issue. As numerous officers repeatedly testified, an order to "stage" is directed to the first officer on scene and means that, for officer safety reasons, the first responding officer in a situation like the instant case should wait for a backup officer to arrive before approaching a building. It does not mean that officers must wait idly by at the scene and refrain from assessing the situation or gathering information until a commanding officer, negotiator or less lethal force arrives as plaintiffs incorrectly represent. Indeed, despite plaintiffs' attempts to misconstrue the evidence, even the testimony of Sgt. John Dauzat, on which they rely, is consistent with the testimony of all the other officers and captains that "staging" means simply that a first responding officer should wait for backup to arrive before moving into a situation. Sergeant Dauzat testified that:

"Q. Are you familiar with the term "staging"?
A. Yes, I am.
Q. Okay. What does that mean?

DEFENDANTS' REPLY TO PLAINTIFFS RACHEL DAVID AND MD'S OPPOSITION TO MSJ OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT  *David v. City of Fremont, et al.* Case No.: C 05 00046 CW

3

A. "Staging" can mean a lot – you know, different things. We ask officers to "stage" for various reasons: No. 1, it could be as easy – as simple as a domestic violence call, where they are just arguing and that's all we have. **And then the <u>first officer on-scene would stage</u> at a corner before going in.** But you have to look beyond that: **If that officer is <u>waiting for his cover unit, the officer he's staging for</u>**, and hears all hell breaking loose in the house, he's not going to continue to stage. He's probably going to go in, and see what he can do to mitigate any injuries to anybody.
Q. Am I right in thinking that "staging" means waiting?
A. Well, with the scenario I just gave you, that's what it means, to the point where, I have come up with some more information and I can't stage any more: I would let people know that, and then that I would be moving in.
Q. And basically waiting, with a purpose, I guess.
A. Sure.[2]

The undisputed evidence establishes that the order to stage was directed at Officer Malcolmson, the first officer on scene, to wait until Officer Chinn or another officer arrived as backup. The order was not directed at Officer Chinn and he did not disobey any order to stage.[3]

The evidence further shows that Officer Chinn did not approach decedent or rush to engage him; he merely approached the open doorway to look inside, <u>not knowing where decedent was located</u>, to assess the situation and determine decedent's location and whether third parties were in the building consistent with police practices. He did not enter the building, he did not approach or confront decedent, his firearm was not drawn and he did not threaten decedent or even call out to him.[4] Officer Chinn also did not violate any training regarding his role as a backup or cover officer for Officer Malcolmson.[5] Officer Chinn's role was not limited to a subordinate role only providing cover for Officer Malcolmson. Rather, the first responding officer responsibilities are fluid and interchangeable between officers depending on the particular situation and evolving circumstances. Officer Chinn and

---

[2] Deposition of Sgt. Dauzat, 99:9-100:12, emphasis added. Relevant portions of the deposition transcripts in support of defendants' Reply are Attached to the Declaration of Gregory M. Fox in support of Reply to plaintiffs' oppositions to motion for summary judgment as follows: Exhibit A, Officer Chinn; Exhibit B, Officer William Malcolmson; Exhibit C, Captain Robert Nelson, Exhibit D, Captain Richard Lucero and Exhibit E, Sgt. Dauzat.
[3] Depositions of Officer Chinn, 79:8-81:1, 142:22-143:25; Officer Malcolmson, 24:3-25:3, 32:4-20, 46:22-47:5, 67:24-68:23, 72:3-9, 114:13-20; Capt. Nelson, 100:6-101:9, 181:22-183:9; Capt. Lucero, 173:23-174:14.
[4] Depositions of Officer Chinn, 112:20-113:2, 187:21-89:24, 190:19-191:8, Officer Malcolmson, 121:2-14, 233:20-26; Capt. Nelson, 118:25-120:7, 182:20-183:9; 187:18-188:23; Capt. Lucero, 162:12-19, 163:6-165:9.
[5] Plaintiff's criticism that Officer Chinn failed to ensure Malcolmson was behind him is immaterial because Malcolmson was in fact behind him providing cover. Deposition of Capt. Nelson, 97:24-98:17, 110:1-17.

4
DEFENDANTS' REPLY TO PLAINTIFFS RACHEL DAVID AND MD'S OPPOSITION TO MSJ OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT   *David v. City of Fremont, et al.* Case No.: C 05 00046 CW

Officer Malcolmson were both responsible for providing cover for each other and for gathering information, and Officer Chinn was not required to wait for instructions from Officer Malcolmson.[6]

Given that the officers were responding to reports that decedent stabbed and cut himself, was still armed with a knife and was still roaming freely in and out of the large warehouse/office building with his co-workers scattered around the premises, some even going back into the building after exiting, Officer Chinn's conduct of approaching the doorway and peering inside plainly was related to the governmental interest of locating injured persons, including decedent, and containing armed, violent subjects. Plaintiffs present no evidence whatsoever that Officer Chinn's conduct was intended to cause harm or that it was unrelated to any legitimate governmental interest, and there is no triable issue that his conduct fails to meet the conscience shocking standard.

### 2. Officer Chinn's Conduct Did Not Deviate From Any "Anticipated Plan"

Plaintiffs' argument that Officer Chinn's conduct prevented the use of trained negotiators and implementation of protocol for responding to a suicidal subject is wholly unsupported. Plaintiffs again ignore that the only thing Officer Chinn did was to approach a wide-open doorway and peer inside. They ignore that the officers could not "secure the scene" without knowing where decedent was or if other persons were injured or in imminent danger. Plaintiffs' arguments that Officer Chinn's conduct was motivated by an intent to disarm decedent and that he intended to act as the department negotiator are utter speculation. Plaintiffs have presented no evidence to support their arguments or even a reasonable inference of such intent. "At summary judgment, this court need not draw all possible inferences in [plaintiffs'] favor, but only all reasonable ones." (*Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002), plaintiff failed to offer any evidence that employer's stated reason for employment termination were unworthy of credence, and argument that jury could infer the "real" reason for discharge was improper was insufficient to defeat summary judgment.) Plaintiffs fail to provide any evidence even suggesting that Officer Chinn's conduct met the heightened "conscience shocking" standard.

---

[6] Depositions of Officer Chinn, 77:4-79:7, 93:13-94:2, 95:11-96:5, 96:14-98:19, 106:21-108:2, 180:21-182:6; Officer Malcolmson, 25:9-26:4, 44:10-45:5, 45:11-46:21, 85:21-86:4, 99:6-100:2, 109:14-110:1, 114:13-115:23, 140:11-20; Capt.

5

DEFENDANTS' REPLY TO PLAINTIFFS RACHEL DAVID AND MD'S OPPOSITION TO MSJ OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT   *David v. City of Fremont, et al.* Case No.: C 05 00046 CW

### 3. Plaintiffs Provide No Evidence That Officer Chinn Acted As The Department's Negotiator

Plaintiffs argue, without any evidentiary support at all, that Officer Chinn intentionally sought the role of negotiator and performed incompetently, and they again have no evidence that any of Officer Chinn's pre-shooting conduct was conscience shocking. Moreover, their reliance on Dr. Perrou's training on "Suicide Prevention – Preventing Your Homicide During A Suicide In Progress" as providing the protocol for Officer Chinn's conduct is misplaced. Plaintiffs ignore that nothing in any of the materials they cite prohibit or even discourage officers from visually assessing the scene or attempting to locate the subject. Indeed, officers cannot even begin to implement any of the tactics outlined by Dr. Perrou without first locating the subject. Plaintiffs also fail to recognize that the tactics are premised on a stable situation once the subject is contained. The officers thus were required to determine decedent's location in order to contain him before trained negotiators could contact him. Plaintiffs once again fail to provide any evidence of conscience shocking conduct.

### 4. Plaintiffs Provide No Evidence That Officer Chinn's Conduct Was "Intended To Harm" "Unrelated To Any Legitimate Governmental Purpose" Rising To The Conscience Shocking Culpability Level

Plaintiffs' argument that Officer Chinn's conduct could have been motivated by a desire to further "his own personal career objectives" rather than a legitimate law enforcement objective is unsupported by any evidence whatsoever. Plaintiffs' wholly unsupported arguments are indistinguishable from the plaintiff's unsubstantiated argument in *Villiarimo, supra* and are likewise insufficient to defeat summary judgment. Plaintiffs argue that Officer Chinn wanted a position on the SWAT team, and to increase his potential for being selected to the SWAT team, "he wanted to be the officer who ended the day heroically, no matter the risk." The *only* evidence, however, was that he applied for the SWAT team, he was designated "qualified" but was not selected and did not apply again.[7] Officer Chinn did not express any intent or interest at all in joining the SWAT team in the

---

Nelson, 91:13-93:12, 96:22-97:13, 101:10-103:21, 111:21-113:13, 136:13-25, 172:20-173:23, 176:17-177:6, 139:13-140:12, 187:18-188:23; Capt. Lucero, 164:16-165:9, 170:20-172:17.

[7] Deposition of Officer Chinn, 22:16-23:16, 24:15-22, 25:4-10; Deposition of Capt. Nelson 24:19-25:24. Relevant portions of the deposition transcripts in support of defendants' Reply are Attached to the Declaration of Gregory M. Fox in

6

DEFENDANTS' REPLY TO PLAINTIFFS RACHEL DAVID AND MD'S OPPOSITION TO MSJ OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT  *David v. City of Fremont, et al.* Case No.: C 05 00046 CW

future. Moreover, there is no evidence whatsoever that Officer Chinn was "attempting to take matters into his own hands" or that he was aware he would have to kill decedent as plaintiffs argue. In fact, the undisputed evidence shows that Officer Chinn merely approached and looked into an open doorway, he did not have his weapon drawn and did not confront decedent verbally, and he repeatedly ordered decedent to drop the knife to avoid having to shoot him. Officer Chinn allowed decedent to close to within 12 to 15 feet before firing, allowing decedent to get closer with a deadly weapon than Officer Malcolmson or their superior officers believed was a safe distance. "We scrutinize the evidence and reasonable inferences to determine whether there is sufficient probative evidence . . . based on more than mere speculation, conjecture, or fantasy.'" (*O.S.C. Corp. v. Apple Computer, Inc.*, 792 F.2d 1464, 1466-1467 (9th Cir. 1986).)[8] Plaintiffs' contention that a jury could find Officer Chinn's conduct was motivated by a desire to be selected to the SWAT team is utter speculation, conjecture and fantasy.

### C.     Officer Chinn Is Entitled To Qualified Immunity

To determine whether an officer is entitled to qualified immunity, "The court should ask whether the [officer] acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable interpretation of the events can be constructed … after the fact." (*Hunter v. Bryant*, 502 U.S. 224, 228 (1991).) "The issue is whether a reasonable officer could have believed that his conduct was justified. This is so notwithstanding that reasonable officers could disagree on that issue." (*Reynolds v. County of San Diego* 858 F.Supp. 1064, 1170 (1994).)

Whether the right was clearly established, "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition . . ." (*Saucier v. Katz* 533 U.S. 194, 201 (2001) "[T]he right the official is alleged to have violated **must have been 'clearly established' in a more particularized, and hence more relevant sense:**. . . The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a

---

support of Reply to plaintiffs' oppositions to motion for summary judgment as follows: Exhibit A, Officer Chinn; Exhibit B, Officer William Malcolmson; Exhibit C, Captain Robert Nelson and Exhibit D, Captain Richard Lucero.
[8] Deposition of Officer Chinn, 112:20-113:11, 116:22-117:3, 120:7-9, 124:17-126:25.

7

DEFENDANTS' REPLY TO PLAINTIFFS RACHEL DAVID AND MD'S OPPOSITION TO MSJ OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT   *David v. City of Fremont, et al.* Case No.: C 05 00046 CW

reasonable officer that his conduct was unlawful **in the situation he confronted**.*"* [Emphasis added.] (*Id.* at 202.)

Officer Chinn is entitled to qualified immunity. First, plaintiffs' rights were not violated and "there is no necessity for further inquiries concerning qualified immunity." Second, plaintiffs failed to meet their burden to establish that the law was clearly established such that Officer Chinn would have been on notice that his conduct under the particular circumstances of this case was prohibited. (*Maraziti v. First Interstate Bank of California*, 953 F.2d 520, 523 (9th Cir. 1992).) Indeed, there is no clear authority that prohibited Officer Chinn from (1) passing Officer Malcolmson, (2) approaching and looking into the open doorway in response to reports that decedent was armed with a knife and had cut and stabbed himself, particularly since he was still armed and the officers did not know where he was located, (3) drawing his firearm when he saw decedent was across the floor with a large knife in his hand, (4) ordering decedent to drop the knife, or (5) firing his weapon when decedent advanced to within 12 to 15 feet still armed with the knife. Even under the general propositions of *Graham* and *Garner*, Officer Chinn's conduct was *permissible,* and was not clearly prohibited.

Plaintiffs' argument that qualified immunity is precluded because Officer Chinn could have ended the threat decedent posed by "simply closing the door" likewise is unfounded, and in fact, contrary to established law. The Ninth Circuit has expressly stated that "even though the officers might have had 'less intrusive alternatives available to them' . . . **police officers 'need not avail themselves of the least intrusive means of responding' and need only act 'within that range of conduct we identify as reasonable.** [Emphasis added.] (*Billington v. Smith*, 292 F.3d 1177, 1189-1190 (9th Cir. 2002).) "Requiring officers to find and choose the least intrusive alternative would require them to exercise superhuman judgment. In the heat of battle with lives potentially in the balance, an officer would not be able to rely on training and common sense to decide what would best accomplish his mission. Instead, he would need to ascertain the *least* intrusive alternative (an inherently subjective determination) and choose that option and that option only. Imposing such a requirement would inevitably induce tentativeness by officers, and thus deter police from protecting the public and themselves. It would also entangle the courts in endless second-guessing of police decisions made under stress and subject to the exigencies of the moment." (*Scott v. Henrich*, 39 F.3d

912, 915 (9th Cir. 1994).) The law plainly was not "clearly established" that Officer Chinn was required to close the door in response to decedent's imminent threat of violence. Plaintiffs failed to establish that the law was "clearly established" prohibiting Officer Chinn's conduct "in the situation he confronted" under any of their theories of liability, therefore, he is entitled to qualified immunity.

Further, plaintiffs' argument that Officer Chinn is not entitled to qualified immunity because they "allege matters of intentional misconduct" is patently insufficient to defeat summary judgment. Plaintiffs were required to produce evidence to raise a triable issue, and plaintiffs failed to meet their burden.

**D.  Officer Chinn's Use Of Deadly Force Was Objectively Reasonable And Privileged And Plaintiff's State Law Negligence Claims Are Meritless**

The test of reasonableness under state law is the same as it is under the Fourth Amendment and *Graham*." (*Martinez v. County of Los Angeles*, 47 Cal.App.4th 334, 343 (1996), citing *Graham,* 490 U.S. at 396-397; *In re Joseph F. v. Joseph F.,* 85 Cal.App.4th 975, 989 (2000).) As discussed fully in defendants' moving papers, above and in defendants' reply to co-plaintiff Jennifer David's separate opposition to the instant motion, decedent demonstrated that he was determined to attack the officers with a knife to force them to shoot him. Officer Chinn's use of force was necessary under the circumstances to stop decedent from seriously injuring or killing him or someone else. Officer Chinn's use of force, therefore, was objectively reasonable and privileged under state law.

**E.  Officer Chinn's Tactics Before The Shooting Were Not Negligent**

Plaintiffs erroneously argue that defendants are not entitled to summary judgment on the grounds that Officer Chinn's pre-shooting tactics were not negligent because they "have argued that Defendant Chinn's actions were in fact intentional misconduct and conscience-shocking". Plaintiffs, however, ignore that they have asserted negligence claims rather than intentional tort claims under state law, and they misunderstand that whether Officer Chinn's conduct was intentional has no bearing on the legal issue of duty necessary to support a negligence cause of action. Plaintiffs also again misunderstand their burden on summary judgment, as their "argument" that Officer Chinn's conduct was intentional or conscience shocking, unsupported by evidence, is insufficient to defeat summary judgment.

9

DEFENDANTS' REPLY TO PLAINTIFFS RACHEL DAVID AND MD'S OPPOSITION TO MSJ OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT   *David v. City of Fremont, et al.* Case No.: C 05 00046 CW

In determining whether a particular defendant owed a tort duty to a given plaintiff, courts should consider the following factors: "(1) the foreseeability of harm to the injured party; (2) the degree of certainty that the injured party suffered harm; (3) the closeness of the connection between the defendant's conduct and the injury suffered; (4) the moral blame attached to the defendant's conduct; (5) the policy of preventing future harm; (6) the extent of the burden to the defendant; and (7) the consequences to the community of imposing a duty to exercise care, with resulting potential liability. . . . Where a public entity is involved, courts should consider . . . the availability, cost and prevalence of insurance for the risk involved; the extent of the agency's powers; the role imposed on it by law; and the limitations imposed on it by budget. . . ." (*Adams v. City of Fremont*, 68 Cal.App.4th 243, 267-268 (1998.)  "In addition, when addressing conduct on the part of a defendant that is 'deliberative, and . . . undertaken to promote a chosen goal, . . . *chief among the factors which must be considered is the social value of the interest which the actor is seeking to advance.*' [Citation.]"  (*Id.* at 268.)  Thus courts must examine the multipart *Rowland*[9] duty test as it applies to the circumstances before it, "exploring the policies endemic to each prong of that standard while remaining mindful of the Supreme Court's pronouncement that **the first policy consideration in duty analysis is 'the social utility of the activity out of which the injury arises**.'"  [Emphasis added.]  (*Id.*)

As discussed fully in defendants' moving papers, in the instant case, balancing the relevant policy considerations likewise militates against imposing a legal duty on Officer Chinn to refrain from investigating and assessing violent suicide situations or to permit armed suicidal individuals to roam freely.  Officer Chinn's conduct was not morally blameworthy and the balance of the factors all heavily favor shielding Officer Chinn from tort liability for his pre-shooting conduct in situations like the instant case. The social value of protecting the lives of third parties and police officers from an armed individual whose whereabouts are unknown is extremely high.  On balance, under the circumstances, Officer Chinn did not owe decedent a duty of care to refrain from approaching and looking into the open doorway as a matter of law.

---

[9] *Rowland v. Christian,* 69 Cal.2d 108 (1968).

DEFENDANTS' REPLY TO PLAINTIFFS RACHEL DAVID AND MD'S OPPOSITION TO MSJ OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT   *David v. City of Fremont, et al.* Case No.: C 05 00046 CW

10

Further, to the extent that plaintiffs premise their negligence claim on the grounds that Officer Chinn's conduct was negligent because he did not "simply shut the door to the Garretcom building entrance, [thereby] ending the threat from Mr. David", their negligence claims still are unsustainable because Officer Chinn had no legal duty to shut the door under the circumstances presented. Plaintiffs cite no legal authority imposing a duty upon police officers to retreat or implement the least intrusive tactics in response to threats of death or great bodily injury. Indeed, California Penal Code Section 835a specifically states that "A peace officer who makes or attempts to make an arrest **need not retreat or desist from his efforts by reason of the resistance or threatened resistance of the person being arrested**; nor shall such officer be deemed an aggressor or lose his right to self-defense by the use of reasonable force to effect the arrest or to prevent escape or to overcome resistance. [Emphasis added.]" The protection of Section 835a is not limited to attempted arrests and extends to police investigations. (*People v. Turner*, 2 Cal.App.3d 632, 635-636 (1969).) Officer Chinn thus had no legal duty to "simply shut the door" as plaintiffs contend. Plaintiffs cannot establish a pre-shooting negligence claim under any of their theories of liability because Officer Chinn had no legal duty to refrain from taking the actions he did or to implement alternative tactics.

### F.  Defendants Are Entitled To Good Faith Immunity For Plaintiffs' State Law Claims

Officer Chinn is entitled to immunity from plaintiffs' state law claims under Govt. Code Section 820.2 and the CITY is entitled to immunity under Govt. Code Section 815.2. Government Code Section 820.2 provides that "Except as otherwise provided by this statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of discretion vested in him, whether or not such discretion be abused." Section 815.2, provides that "a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability." "This 'discretionary immunity' rule immunizes public employees from liability in performing discretionary acts within the scope of their employment, unless otherwise provided." (*Reynolds v. County of San Diego*, 858 F.Supp. 1064, 1074 (1994).[10]) "**In actions involving claims under state law, an officer's use of deadly force is privileged as a matter of law if he reasonably fears for his safety or that of others**

DEFENDANTS' REPLY TO PLAINTIFFS RACHEL DAVID AND MD'S OPPOSITION TO MSJ OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT   *David v. City of Fremont, et al.* Case No.: C 05 00046 CW

11

**in the area**." [Emphasis added.] (*Id*., citing *People v. Rivera,* 8 Cal.App.4th 1000, 1007 (1992).)  "[An officer's] split-second decision to use force is exactly the kind of act which section 820.2 was enacted to shield from liability." (*Reynolds*, 858 F.Supp. at 1074; *Martinez*, 47 Cal.App.4th at 349.)

In this case, Officer Chinn reasonably believed that locating decedent was necessary to investigate the situation, assess his injuries and contain the situation so that decedent did not injure anyone else with the knife.  He also reasonably believed that deadly force was necessary to stop decedent from seriously injuring or killing him with the knife when decedent refused to disarm and advanced on the officers.  Officer Chinn's split-second decisions to look into the wide open doorway, to order decedent to drop the knife and to use force are exactly the types of acts which section 820.2 was enacted to shield from liability.  Officer Chinn is entitled to immunity under section 820.2.  The City also is entitled to immunity under Govt. Code Section 815.2 because Officer Chinn cannot be liable in this case and there is no basis for respondeat superior liability against the City.

Plaintiffs' effort to defeat immunity by merely characterizing Officer Chinn's conduct as "deliberate" or "conscience shocking", unsupported by any evidence, again is insufficient to overcome summary judgment.  Plaintiffs' argument, speculation and conjecture fails to sustain their burden to present evidence to raise a triable material issue.

### V.   CONCLUSION

For the reasons set forth above, in defendants' reply to plaintiff Jennifer David's opposition and in defendants' moving papers and supporting papers filed concurrently herewith, defendants respectfully request that summary judgment be granted in their favor.

DATED:  June 2, 2006                                            BERTRAND, FOX & ELLIOT

By:  /S/
Gregory M. Fox
Dana L. Soong
Attorneys for Defendants
CITY OF FREMONT, CRAIG STECKLER
and MICHAEL CHINN

---

[10]   Affirmed in part and remanded in part on other grounds, *Reynolds, supra* 84 F.3d 1162.